UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANATOLIO CLAVIJO-URBANO, | Case No.  2:26-cv-00709-JLT-CDB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (A-Number 246 060 646) |
| v. | |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, *et al.*, | (Doc. 1) |
| Respondents. | **7-Day Objection Period** |

Petitioner Anatolio Clavijo-Urbano, a federal immigration detainee proceeding pro se, initiated this action on March 5, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 1).  That same day, Petitioner filed a motion for temporary restraining order ("TRO").  (Doc. 2).  Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the California City Correctional Center.  (Doc. 1 at 3).  Respondents are the unnamed Warden of the California City Correctional Center; the unnamed Field Office Director for the ICE San Diego Field Office; the unnamed Acting Director of ICE; the unnamed Secretary of the Department of Homeland Security ("DHS"); and the unnamed Attorney General of the United States. *Id.* at 4.

On March 5, 2026, the assigned district judge denied the TRO and referred the matter to the undersigned for a determination on the merits.  (Doc. 4).  On March 6, 2026, the undersigned directed Respondents to show cause in writing as to whether this action is factually or legally

distinct from the Court's prior orders addressing petitions arising under circumstances similar to those here, citing *Diaz v. Noem*, No. 1:26-cv-00066-JLT-CDB (HC), 2026 WL 323257 (E.D. Cal. Feb. 6, 2026), *recommendation adopted*, 2026 WL 487496 (E.D. Cal. Feb. 20, 2026).  (Doc. 6).  On March 16, 2026, Respondents timely filed a response.  (Doc. 7).  Petitioner filed a reply on April 20, 2026.  (Doc. 8).

For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted.

I.    **Relevant Background**

The relevant facts are drawn from the parties' filings.  *See* (Docs. 1, 7, 8).  Petitioner is a citizen and native of Mexico who entered the United States without inspection at an unknown location sometime in 1998.  (Doc. 1 at 4 ¶ 1; *id.* at 13 ¶ 3).  Petitioner has lived in the country since his arrival and is the primary provider for his family, who also reside in the United States.  *Id.* at 13 ¶¶ 3-4, 8.  Petitioner does not allege and the record does not reflect that he was initially arrested and placed in immigration custody at or near the time he entered the United States.

Petitioner alleges that he has no criminal record and has never been convicted of any crime. *Id.* ¶ 5.  In contrast, Respondents assert that, on February 10, 1998, Petitioner was convicted of second degree burglary (California Penal Code § 459),[1] a misdemeanor, and sentenced to ten days in jail and 36 months of probation, and was granted post-conviction relief pursuant to California Penal Code § 1203.425 on July 8, 2022.  (Doc. 7 at 2; Doc. 7-4 at 4).  Respondents otherwise concede that the instant action is not substantively distinguishable from *Diaz v. Noem*.  (Doc. 7 at 3).

Respondents attach to their response to the petition a Department of Homeland Security ("DHS") Record of Deportable/Inadmissible Alien form, noting the arrest of Petitioner by immigration authorities on December 28, 2025.  The form indicates that ICE agents conducted a field operation to locate and apprehend Mateos Mejia Alberto and, during this operation,

---

[1] Respondents provide that the conviction was under California Penal Code § 249.  (Doc. 7 at 2). However, that section does not relate to burglary and the FBI rap sheet attached as an exhibit to Respondents' brief indicates that the conviction was under California Penal Code § 459.  (Doc. 7-4 at 4).

encountered and arrested Petitioner.  (Doc. 7-2 at 2).  Respondents also attach a Notice to Appear form dated and signed by Petitioner on December 28, 2025.  (Doc. 7-1).  In his reply, Petitioner acknowledges the misdemeanor conviction mentioned by Respondents and asserts it carries "vanishingly small weight when measured against the subsequent [15] years of a peaceable, productive life."  (Doc. 8 at 3).

The Court also takes judicial notice that Petitioner has an upcoming immigration hearing on May 29, 2026.[2]

## II.      Governing Authority

### A.      The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  *See* 28 U.S.C. § 2241.  A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds."  *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.      Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225.  Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal.

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited May 7, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

Sept 12, 2025), which the undersigned adopts herein:

### 1. Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2. Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C.

§ 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply

expedited removal to the fullest extent authorized by statute." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible

6

for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.    Exhaustion

### A.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been

7

exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

**B.    Analysis**

Neither Petitioner nor Respondents address the issue of exhaustion. *See* (Docs. 1, 7).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under § 1225(b). *See* (Doc. 7 at 1); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022). Further, the BIA has held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile. *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief. *See, e.g.*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and

designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.   Discussion

Petitioner asserts two causes of action in his petition: (1) for violation of the Immigration and Nationality Act ("INA"); and (2) for violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (Doc. 1 at 10-11).

As set forth below, because the undersigned finds that Respondents have failed to apply the correct statutory scheme and have unlawfully detained Petitioner, and because Petitioner's other claim seeks the same or similar relief (*i.e.*, for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof), the undersigned forbears from addressing Petitioner's due process claim.

### A.   Statutory Scheme: 8 U.S.C. § 1226(a) Applies

Respondents contend that Petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and is subject to mandatory detention by ICE under § 1225(b)(2) during the pendency of his removal proceedings. (Doc. 7 at 2-3).

Based on the allegations of the petition and the record summarized above, the Court presumes that Petitioner was first arrested and detained by immigration authorities (ICE) upon the reported date of his arrest on December 28, 2025, resulting in his current term of detention. *See* (Doc. 1; Doc. 7-2 at 2).

Section 1225 governs the detention of noncitizens "seeking admission" into the United States. *See Jennings*, 583 U.S. at 289; *see id.* at 282 ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."). In contrast, § 1226 sets forth a "default rule" for noncitizens already present within the United States. *Id.* at 288. Relevant here, § 1225(b)(1) applies to aliens "arriving in the United States" or aliens who have "not been

admitted or paroled into the United States" and have not "affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)1)(A)(i), (iii)(II).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, an examining immigration officer must determine that the individual is (1) an "applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1113 (E.D. Cal. 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)).

Here, Petitioner already was present and had resided in the United States for over 25 years following his entry in 1998 when he was first arrested and detained by ICE in December 2025. Moreover, Respondents do not argue, nor do the records show, that Petitioner has not been physically present in the United States continuously for the two-year period immediately prior the date of the determination of inadmissibility under § 1225(b) to lawfully place him in removal proceedings and mandatory detention under that statutory regime. *See* 8 U.S.C. § 1225(b).

Section 1225(b) attaches only where the noncitizen is "seeking admission." Petitioner already resided in the United States and, thus, neither is "seeking admission" nor subject to inspection within the meaning of § 1225(b)(2)(A). Further, the record does not reflect that Petitioner took any affirmative act for adjustment of status. Regardless, in the event Petitioner had done so, it would not change the fact that § 1226 governs immigration arrests conducted within the interior of the country. *See Diaz v. Albarran*, No. 3:25-cv-09837-JSC, 2025 WL 3496686, at *3 (N.D. Cal. Dec. 5, 2025) (rejecting government's position that petitioner is an applicant for admission "'twice over' because he (1) is present without having been admitted or paroled[] and (2) has a pending application to adjust his status to that of a permanent resident"; finding that § 1226 governs immigration arrests conducted within the interior of the United States); *Torres v.*

10

*Bondi*, No. 25-cv-02457-BAS-MSB, 2025 WL 3214773, at *4 (S.D. Cal. Nov. 18, 2025) (finding detention of a petitioner with longstanding residency in the United States, an approved Form I-130, and a scheduled adjustment of status interview is governed by § 1226); accord *Ortiz v. Chestnut*, No. 1:26-cv-01167-DC-SCR (HC), 2026 WL 508419, at *4 (E.D. Cal. Feb. 24, 2026) (same).

Based on these facts, the plain language of § 1225(b) demonstrates that it is inapplicable to Petitioner. Petitioner is not "arriving" in the United States but rather arrived here in 1998 before he was arrested in December 2025. Further, Respondents have not shown that an examining immigration officer made any determination under § 1225(b)(2)(A) that Petitioner is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." *See Lepe*, 801 F. Supp. 3d at 1113. Indeed, the Notice to Appear form in the record that was issued to Petitioner indicates that upon his arrest, Petitioner was placed into removal proceedings pursuant to Section 240 (Doc. 7-1), and Respondents do not contend or show that Petitioner ever was placed in expedited removal under § 1225, further illustrating that DHS chose to place Petitioner in removal proceedings with greater procedural protections than a noncitizen in expedited removal proceedings. *See Garcia v. Chestnut*, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *8 (E.D. Cal. Dec. 31, 2025) (citing *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 143 (W.D.N.Y. 2025) ("Because DHS chose to place Mata Velasquez in section 240 proceedings instead of pursuing expedited removal in the first instance—even though it was not required to do that—the government vested Mata Velasquez with the rights that Congress guaranteed non-citizens in those proceedings.").

Under these circumstances, and having determined that the mandatory detention framework under § 1225(b) does not apply to Petitioner, the undersigned finds that § 1226(a) provides the proper framework for noncitizens already residing in the United States. *See, e.g.*, *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1076-77 (S.D. Cal. 2025). In *Garcia*, three petitioners entered the United States and resided in the country for some time before they were arrested and placed into immigration detention in June and July 2025. *Id.* at 1070. These petitioners, like Petitioner here, were charged by ICE with inadmissibility as being present in the United States without being admitted or paroled. *Id.* The *Garcia* court found that § 1225(b) did not apply to these petitioners because they were not "seeking admission" within the meaning of that statute and that the

11

petitioners' detention therefore was governed by § 1226(a), including for discretionary detention and a bond determination hearing.  *Id.* at 1076-78; *see Martinez*, 792 F. Supp. 3d at 221 ("[S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'") (citing *Jennings*, 583 U.S. at 288-89).

Other courts likewise have found that the text of sections 1225 and 1226, coupled with application of commonly used canons of statutory interpretation, legislative history, and ICE's historical practices predating DHS's recent shift in policy, weigh in favor of finding that section 1226(a)'s discretionary framework governs the detention of noncitizens who, like Petitioner, is already in the country when encountered by immigration authorities.  *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025);  *Otero v. Robbins, et al.*, No. 1:25-cv-1790 CSK, 2025 WL 3704453, at *5 (E.D. Cal. Dec. 22, 2025) (collecting cases, adopting the reasoning of the *Lepe* court, and finding that "[t]his Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226"); *Morales-Flores v. Lyons*, No. 1:25-cv-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases and noting "Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful"); *J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (citing cases and noting that this conclusion is "consistent with the holdings of dozens of district courts across the country"); *Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (noting that this statutory interpretation "has been challenged in at least 362 cases in federal district courts," with the challengers having prevailed "either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts").

Having found that Petitioner unlawfully is detained by Respondents without affording him a custody redetermination to which he is entitled under § 1226(a), the undersigned addresses below the relief that should be awarded.

**B.    Remedy**

"Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz*, 53 F.4th at 1197

(citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id*. (internal quotation and citations omitted).

While Respondents maintain that Petitioner was detained pursuant to § 1225, they have neither argued nor proffered facts in support of any argument that Petitioner is a flight risk or danger to the community. The record shows that Petitioner incurred a conviction for misdemeanor burglary in February 1998. However, this conviction predated his arrest by over 25 years and Respondents acknowledge that Petitioner was granted rehabilitative post-conviction relief in July 2022, over three years prior to his arrest by ICE. (Doc. 7 at 2).

Given that Respondents do not assert any other basis for Petitioner's detention, the appropriate remedy is Petitioner's immediate release. *See Ortiz*, 2026 WL 508419, at *4 (citing *Lepe*, 801 F. Supp. 3d at 1119). Further, because the record does not reflect that Petitioner has ever been afforded a custody redetermination, the undersigned will recommend that Respondents may not seek to re-detain Petitioner without first providing him at least seven days' notice and thereafter holding a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. *See Lepe*, 801 F. Supp. 3d at 1120.

### C.   Respondents' Reference to Ninth Circuit Appeals

Separately, Respondents assert that there are matters pending appeal before the Ninth Circuit that bear on the issues presented in this case. (Doc. 7 at 2 n.2, 3; citing, *inter alia*, *Rodriguez v. Bostock*, No. 25-6842). Having found that Petitioner is unlawfully detained by Respondents without affording him a custody redetermination to which he is entitled under § 1226(a), the undersigned will not recommend holding the matter in abeyance pending said appeals. *See T.M. v. Warden, California City Corr. Ctr.*, No. 1:26-cv-02667-TLN-SCR, 2026 WL 1045525, at *4 n.2 (E.D. Cal. Apr. 17, 2026) (declining to "delay issuing relief on the prospective chance" that an appeal may change the outcome of a claim).

///

**V.      Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (Doc. 1) be GRANTED.

2.  Respondents be ORDERED to release Petitioner immediately.

3.  Respondents be ENJOINED and RESTRAINED from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

4.  The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **May 8, 2026**

_____
UNITED STATES MAGISTRATE JUDGE